**B & B INVESTMENT CLUB et al., Plaintiffs,**

v.

**KLEINERT'S INC. et al., Defendants.**

**Civ. A. No. 73–642.**

United States District Court, E. D. Pennsylvania.

March 1, 1974.

---

142

Allen D. Black, Harold E. Kohn, P.A., Aaron M. Fine, David H. Weinstein, David H. Marion, Philadelphia, Pa., for plaintiffs.

Donald A. Scott, Morgan, Lewis & Bockius, John M. Phelan, Franklin Poul, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

CLIFFORD SCOTT GREEN, District Judge.

Presently before the Court is plaintiffs' motion for a class action determination in this action brought under the securities laws.

The Court approves the class proposed by the plaintiffs and denies the request of certain defendants that the determination be made conditional upon the use of a verified proof of claim procedure in connection with the initial notice to the class.

The plaintiffs sue the defendants individually and jointly charging violations of sections 12(2) and 17(a) of the "Securities Act of 1933", 15 U.S.C.A. § 77l(2) and § 77q(a); sections 10(b) and 20(a) of the "Securities Exchange Act of 1934", 15 U.S.C.A. § 78j(b) and § 78t (a); and Rule 10b–5, 17 C.F.R. 240.10b–5, adopted by the Securities and Exchange Commission under authority of sections 10(b) and 23(a) of the Exchange Act, 15 U.S.C.A. 78j(b) and 78w (a).

This Court has jurisdiction over this action under section 22(a) of the Securities Act, 15 U.S.C.A. § 77v and section 27 of the Exchange Act, 15 U.S. C.A., § 78aa.

The gravamen of the complaint in this case arises from the public offering of the stock of defendant, Kleinert's Inc., on or about May 17, 1972. On December 7, 1972, trading of Kleinert's Inc. shares was suspended on the American Stock Exchange (ASE). Trading resumed December 21, 1972, after the company mailed a letter to shareholders explaining its losses from operations for the fiscal year that ended October 7, 1972. During the period of approximately May 17, 1972 to May 24, 1972, an undetermined number of persons purchased approximately 295,000 shares of the common stock of defendant, Kleinert's Inc. at $30.00 per share. An undetermined number of persons purchased subsequent to the public offering at prices ranging from $24.00 to $35.00 per share. At the time the complaint was filed Kleinert's Inc. stock was trading on the ASE at about $11 per share.

The plaintiffs are a Pennsylvania partnership and three of its individual members. All of the plaintiffs made purchases pursuant to the public offering and one of the individual plaintiffs made a purchase in the aftermarket. Defendants are Kleinert's, Inc., the issuing company whose principal business is the

manufacture and sale of infants' and childrens' clothing and womens' personal apparel and notions. The other defendants are all connected with Kleinert's, Inc. including accounting firms, an underwriter, and individuals all of whom were either directors and/or officers of Kleinert's, Inc. at the relevant time and two of whom are alleged to be controlling persons within section 20(a) of the Exchange Act.

The plaintiffs charge in two counts that defendants' registration statement and prospectus for the May 17, 1972, public offering and other documents were false and misleading or failed to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in violation of sections 12(2) and 17(a) of the Securities Act and in violation of section 10(b) of the Exchange Act and rule 10b–5 promulgated thereunder.[1] Plaintiffs claim that both the alleged material misrepresentations and omissions and the alleged conspiracy of the defendants were for the purpose and had the effect of causing the plaintiffs and the class to purchase the common shares of Kleinert's for an excessive consideration due to the artificially high price produced by the defendants' activities.

The proposed class which we approve is defined as all those persons, excluding the defendants herein, who purchased shares of Kleinert's, Inc. in the period May 17, 1972 to December 7, 1972, including those who purchased during the underwriting of approximately 295,000 shares of Kleinert's common stock on or about May 17, 1972.

Before a class action may be maintained under F.R.Civ.P. 23, there must be a showing that:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition to the foregoing prerequisites of section (a), the class proponents must satisfy one of the three conditions of section (b). The plaintiffs here rely upon subsection (3), which requires that:

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claim in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Various issues have been submitted by different defendants. Defendant, Arthur Anderson, directly opposes certification of the class on the ground that certification is not yet ripe because defendants have not taken any discovery and so have not yet developed informa-

1. More specifically, the complaint alleges that defendants misrepresented and failed to adequately disclose facts concerning: (1) the financial condition of Kleinert's, Inc.; (2) problems of inventory and/or production in a subsidiary acquired in mid-1971; (3) a strike which occurred from May, 1971 through December 1971 at one of Kleinert's largest plants and its continuing effects on Kleinert's operations and financial condition; (4) the results of operations of Kleinert's for certain periods up to immediately prior to the public offering; and (5) the anticipated results of operations for the fiscal year to end about October 7, 1972.

tion on whether the criteria of F.R.Civ. P. 23 are met in this case.

■■ We find that the class is so numerous that joinder of all members is impracticable in that as of October 7, 1972, there were 889 record shareholders and since 295,000 shares of Kleinert's, Inc. were purchased from May 17 to May 24, pursuant to the public offering, the class is undoubtedly larger than 889. We also find that there are questions of law or fact common to the class and that these questions predominate over any questions affecting only individual members, that the claims of the representative parties are typical of the claims of the class, that the representative parties will fairly and adequately protect the interests of the class and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

■ Related to the argument as to the lack of discovery, three problems are advanced as to Rule 23 criteria. First, it is argued that antagonistic interests may be important among class members in that, depending upon when they bought and when and if they sold their stock, the interests of members will be different as to the amount of artificial inflation of the price at various times. It is argued that divergent interests of class members as to the materiality of different events on which liability is based may result in a lack of typicality and even fair representation as stated in Robinson v. Penn Central Company, 58 F.R.D. 436 (S.D.N.Y.1973). However, the *Robinson* case, unlike the present case, was not one involving a single or related documents so that here the objection is relevant primarily to proof of damages. Initially, the primary issue will not be the amount of damages but rather whether there is any liability on the part of defendants at all and any future conflicts can be handled by the formation of subclasses or further de-

lineation of the class.[2] Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 737 (3rd Cir. 1970), cert. den., 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1970); Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 566 (2nd Cir. 1968); Knuth v. Erie-Crawford Dairy Coop. Association, 395 F.2d 420, 428–429 (3rd Cir. 1968), cert. den., 410 U.S. 913, 93 S.Ct. 966, 35 L.Ed.2d 278 (1973); Entin v. Barg, 60 F.R.D. 108 (E.D.Pa.1973); In re Caesars Palace Securities Litigation, 360 F. Supp. 366 (E.D.Pa.1973).

■■ Second, defendant asserts that discovery will aid in determining whether any of the plaintiffs relied. There is no basis in the context of the question of class certification to inquire into the merits of the claims of the named plaintiffs nor the merits of the cause generally. Huff v. N. D. Cass Company of Alabama, 485 F.2d 710, 712 (5th Cir. 1973) (en banc); Kahan v. Rosenstiel, 424 F.2d 161, 169 (3rd Cir. 1970), cert. den. sub nom., 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970); Entin v. Barg, *supra*, 60 F.R.D. at p. 114; In re Penn Central Securities Litigation, 347 F.Supp. 1327, 1345 (E.D.Pa.1972). Of course, the identification of the relevant legal issues that will be present at trial is necessary to apply the criteria of Rule 23. Bogosian v. Gulf Oil Corporation, 62 F.R.D. 124 (E.D.Pa.1973). The necessity of proof of individual reliance in a case such as this is not altogether certain. Affiliated UTE Citizens of Utah v. United States, 406 U.S. 128, 152–154, 92 S.Ct. 1456, 1471–1472, 31 L.Ed.2d 741; Rochez v. Rhoades, 491 F.2d 402 (3rd Cir. 1973); Landy v. Federal Deposit Insurance Corporation, 486 F.2d 139, 170 (3rd Cir. 1973); Kohn v. American Metal Climax, Inc., 458 F.2d 255, 269 (3rd Cir. 1972), cert. den., 409 U.S. 874, 93 S.Ct. 120, 34 L.Ed.2d 126 (1972); Kahan v. Rosenstiel, *supra*, 424 F.2d at 173; Entin v. Barg, *supra*, 60 F.R.D. at p. 112; Grad v. Memorex Cor-

---

**2.** Moreover, one of the named plaintiffs, Frank Sivitz, in addition to purchasing shares in the public offering, purchased 50 shares on or about November 24, 1972.

poration, 61 F.R.D. 88 (N.D.Cal.1973). However, we need not decide that issue here for even if such proof is necessary it is not a bar to a class action. Green v. Wolf Corporation, 406 F.2d 291, 301 (2nd Cir. 1968), cert. den., 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); Entin v. Barg, *supra,* 60 F.R.D. at p. 112; In re Penn Central Securities Litigation, *supra,* 347 F.Supp. at 1344–1345. In terms of questions of predominance and manageability in this regard, we think it proper to compare the time that would be spent on the common and individual issues if all the claims represented here were prosecuted as separate actions. In Re Coordinated Pretrial Proceedings In Antibiotic Antitrust Actions, Trade Cas. ¶73,848, at p. 89,960 (S.D. N.Y.1971); State of Minnesota v. United States Steel Corporation, 44 F.R.D. 559, 569 (D.Minn.1968).

Third, defendant asserts that since the size of the class is not yet determined, the Court cannot ascertain whether the class is manageable. Moreover, the defendant asserts that the cost of notice must be borne by the plaintiffs and they have not shown whether they can meet that, as of yet, undefined task.

 We agree that the burden is on the plaintiffs to establish their right to maintain a class action, Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452, 457 (E.D.Pa.1968) and that the plaintiffs in addition may be required to bear the burden of the cost of notice to the class, Eisen v. Carlisle & Jacquelin, 479 F.2d 1005, 1015, (2nd Cir. 1973); cert. grtd., 414 U.S. 908, 94 S.Ct. 235, 38 L.Ed.2d 146 (1973); Greenfield v. Villager Industries, Inc.,

483 F.2d 824, 832 (3rd Cir. 1973). Although the plaintiffs have not demonstrated the exact number of members, they have defined the relevant period and stated that there were 889 holders on October 7, 1972. Moreover, plaintiffs have made the uncontradicted statement that there were only about 100 trading days during this period so that the class could not be more than a few thousand. The specification of time period and assertions above, Entin v. Barg, *supra,* 60 F.R.D. at p. 111; Fischer v. Kletz, 41 F.R.D. 377, 384 (S.D. N.Y.1966), satisfy the requirement that there be an adequately defined class, Weisman v. MCA, Inc., 45 F.R.D. 258, 261 (D.C.Del.1968), and dispose of any question as to size, in itself, as related to manageability. However, although the papers filed thus far do not make it completely clear, the parties seem to agree that almost all of the various class members can be easily identified through a combination of access to Kleinert's transfer records and the records of brokerage houses and such a procedure appears appropriate. Berland v. Mack, 48 F.R.D. 121, 127, 129–130 (S.D.N.Y. 1969). The plaintiffs have not made any estimate of the cost of notice nor asserted their willingness to pay the same. Nevertheless, we think it proper in this case, which is a relatively small securities action in terms of the number of class members, to certify the class at this time rather than postpone for an evidentiary hearing on the question of notice.[3] Cf. Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 570 (2nd Cir. 1968). Consequently, we will conditionally certify the class proposed and order plaintiffs to present the Court with their

---

3. Arthur Anderson has placed heavy reliance upon a statement in Eisen v. Carlisle and Jacquelin, 479 F.2d 1005, 1013 (2nd Cir. 1973) regarding the nullification of procedural safeguards established by the Constitution, Congress, and the Federal Rules of Civil Procedure including Rule 23. The specific procedures with which that decision and admonition dealt are not involved in this case at this time except as to notice with which we deal above. In regard to discovery on the issue of class action certification, the defendant has not seen fit to take advantage of the opportunity that it has had therefor. Defendant has asserted that it has a substantive right to know the size of the class before the Court can decide plaintiffs' motion for a class action determination without citation to authority. Whether such an issue be characterized as a substantive or procedural matter, we think the suggestion is directly contrary to Rule 23 and reject it.

proposal on how to identify the class members and the cost involved in notice and their ability and willingness to meet those requirements. The defendants suggest they will be unduly prejudiced by certification followed by a later de-certification. We are not unmindful of the asserted adverse effects upon defendants; nevertheless, for the reasons set out above and since we order plaintiffs to promptly proceed in this regard, we conditionally certify. Cf. Cusik v. N. V. Nederlandsche Combinatie Voor Chem. Ind., 317 F.Supp. 1022 (E.D.Pa. 1970).

## II

In connection with class certification and notice, certain defendants request that the Court order that the initial notice to the class contain verified proofs of claim and that the filing of these proofs be required as a condition of continued membership in the class.

Pursuant to this procedure, class members would be required to file a written request for exclusion by a date certain and each member not requesting exclusion therefrom would be required to file within sixty days after the notice mailed, a written and verified proof of claim. Fifteen days after the 60 day period runs, plaintiffs would be required to prepare a list of those who have neither requested exclusion nor filed a proof of claim. This group would receive a second 60 day notice informing them that if they did not file within 60 days they would be forever barred from sharing in the benefits of a favorable judgment or any other recovery in the action. Plaintiffs then would prepare a list of the three categories of class members and any party could seek an order barring those class members from recovery who have neither requested exclusion nor filed verified proofs of claim. The form proposed, which must be notarized, requires information on the number of shares purchased and sold, the dates of the transactions, the prices involved, the brokers through whom the transactions were affected, and whether or not the individual relied and, if so, the specification of the basis thereof.

Defendants contend that the use of this proposed procedure will provide information necessary for pre-trial procedures. Defendants' contentions are as follows: First, it will establish the true dimensions of the class. Second, it will facilitate decision on whether class approval should be continued or revoked and as to whether subclasses should be created in regard to purchases in the public offering or the after market. Third, the procedure will facilitate the determination of whether disposition short of trial is possible by establishing the real dollar amount of actual claims. Defendants argue that no intelligent settlement discussion can take place in the present informational vacuum for the parties may remain apart only because of different expectations as to the number of claimants who would ultimately file proofs of claim and the class representatives may feel compelled to bargain on the basis of the maximum possible number of claimants. Thus, class members who do not intend to file proofs of claim may, by their continued existence as class members severely prejudice the rights of those who do intend to file to have settlement affected on their behalf. Fourth, it is contended the procedure restores the parties to an equal bargaining position for otherwise class representatives purport to represent claims that class members never intend to assert. Finally, defendants assert that the information sought is largely that which is normally kept for tax reporting purposes and which (if the representatives were successful at trial or a settlement was effected) class members would have to eventually submit to share in any recovery. Therefore, defendants argue the procedure imposes no undue burden on the class and produces the benefits outlined above.

These considerations and others related thereto have led a number of courts

to adopt the same or a similar procedure to that suggested here in antitrust, securities, and other types of cases. Some of these cases involved sophisticated plaintiff classes such as governmental entities whereas others have involved average investors in a securities case. There has been variation as to whether the proof of claim form should be mailed with the initial notice or at a later time and as to whether any sanction should be referred to or applied, such as being barred from any recovery affected, for failure to comply with the procedure. *See,* Unicorn Field Inc. v. The Cannon Group, Inc., 60 F.R.D. 217 (S.D.N.Y. 1973); Arey v. Providence Hospital, 55 F.R.D. 62, 70–72 (D.D.C.1972); Lamb v. United Security Life Company, 59 F.R.D. 44 (S.D.Iowa, 1972); Siegel v. Realty Equities Corporation of New York, 54 F.R.D. 420 (S.D.N.Y.1972) (order entered, April 7, 1972); In re Cohen's Will, 51 F.R.D. 167 (S.D.N.Y. 1970), aff'd on merits sub nom., 478 F. 2d 115 (2nd Cir. 1973); Korn v. Franchard Corporation, 50 F.R.D. 57, 59–60 (D.C.N.Y.1970); class action certification revoked, CCH Fed. Sec. Law Rep. ¶ 92,845 (S.D.N.Y.1970), motion to dismiss appeal denied, 443 F.2d 1301 (2nd Cir. 1971), rev'd on merits, 456 F.2d 1206 (2nd Cir. 1972); Biechele v. Norfolk & Western Railway Co., 309 F. Supp. 354, 356, 360–361 (N.D.Ohio, 1969); Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452, 459, 462 (E.D.Pa.1968); Iowa v. Union Asphalt Roadoils, Inc., 281 F. Supp. 391, 403–404 (S.D.Iowa, 1968), aff'd on other grounds, 408 F.2d 1171 (8th Cir. 1969), 409 F.2d 1239 (8th Cir. 1969); State of Minnesota v. United States Steel Corporation, *supra,* 44 F.R. D. at 577–578; Harris v. Jones, 41 F.R. D. 70, 74–75 (D.Utah, 1966).

As noted, some of the same cases have refused to provide for sanctions for non-compliance, either without explanation, or on the ground that to do so would be fundamentally inconsistent with the opt-out procedure established by section (c) of Rule 23. Unicorn Field, Inc. v. The Cannon Group, Inc., *supra,* 60 F.R. D. at p. 228; In re Cohen's Will, *supra,* 51 F.R.D. at p. 175;[4] Korn v. Franchard Corporation, *supra,* 50 F.R.D. at p. 60[5].

Moreover, other cases have suggested that such a procedure is inappropriate under Rule 23 at least under the facts of those cases. Ostroff v. Hemisphere Hotels Corporation, 60 F.R.D. 459, 462 (S. D.N.Y.1973); Abulaban v. R. W. Pressprich & Co., 51 F.R.D. 496, 497 (S.D. N.Y.1971); In re Pretrial Proceedings in Antibiotic Antitrust Actions, *supra* at p. 89,961; Berman v. Narragansett Racing Association, 48 F.R.D. 333, 338 (D.R.I.1969).

In terms of the language of the Rule itself the problem created by such a procedure is reflected by sections (c) and (d). Section (c) provides, in pertinent part:

"(2) In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether

---

4. As defendants point out this case was decided by Judge Tenney who also decided the later case of Siegel v. Realty Equities Corporation, supra, in which the proof of claim warned that failure to comply might result in their claim being barred and that the court may at a later time bar the claims of noncomplying class members at either party's request.

5. The defendants in the instant case expressly request the claims of non-complying class members be barred. Therefore, the discussion that follows and the resolution of this issue are predicated upon a proof of claim procedure with a sanction of barring claims. A proof of claim procedure without sanction for non-compliance may pose a substantially different question and our discussion at least in part is inapposite thereto.

favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

(3) . . . . The judgment in an action maintained as a class action under subdivision (b)(3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subdivision (c)(2) was directed, and who have not requested exclusion, and whom the court finds to be members of the class."

Section (d) provides:

In the conduct of actions to which this rule applies, the court may make appropriate orders: (1) determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument; (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action; (3) imposing conditions on the representative parties or intervenors; (4) requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly; (5) dealing with similar procedural matters . . . ."

Section (c) provides that class members who do not request exclusion will be bound by the judgment in the action. Section (d), especially (d)(2), has been cited as the source of authority for the proof of claim procedure proposed by the defendants. State of Iowa v. Union Asphalt & Roadoils, *supra*, 281 F.Supp. at 409; Harris v. Jones, *supra*, 41 F.R.D. at 74 f. n. 9; in that it provides that the Court may make an appropriate order, for the fair conduct of the action, that notice be given as the Court directs to class members to come into the action.

The fundamental structure of the (b)(3) class action under Rule 23 is that all class members are bound who do not request exclusion. We believe that it is implicit in the adoption of that procedure, and we agree with the Courts that have so held, that one of the purposes of Rule 23 is to provide a forum to small claimants who, absent this device, would fail to act to affirmatively press their claims. Esplin v. Hirschi, 402 F.2d 94, 101 (10th Cir. 1968), cert. den., 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 560 (2nd Cir. 1968); Hohmann v. Packard Instrument Company, 399 F.2d 711, 715 (7th Cir. 1968); Welmaker v. W. T. Grant Company, 365 F. Supp. 531, 553–554 (N.D.Ga.1972); Advisory Comm. Note, 39 F.R.D. 98, 104 (1968); *contra*, Weithers, Amended Rule 23: A Defendant's Point of View, 10 B.C.Ind. & Com.L.Rev. 515, 517–21 (1969). The express incorporation of the opt-out procedure without an opt-in provision implements that objective. We also think that the corollary behavioral premise that small claimants will more likely take affirmative action to recover when and if liability and/or a recovery fund is established is correct. Unicorn Field, Inc. v. The Cannon Group, Inc., *supra*; In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions, *supra*, at p. 89,961.

Further, we note that the effectiveness of the securities laws depends in large measure on the applicability of the class action device. Kahan v. Rosenstiel, *supra*, 424 F.2d at 169; Esplin v. Hirschi, *supra*.

The question here, of course, only involves the timing of affirmative action by way of the filing of a proof of claim. For the reasons set out above, generally

such affirmative action should not be required of class members until liability is established and/or a recovery fund otherwise established.[6] At least as to this particular action, we have not been persuaded to the contrary by the defendants.[7] Of course, the type of action discussed here will be unnecessary if defendants prevail.

We do not believe that the usefulness of the suggested procedure in eliciting information related to the appropriateness of the formation of subclasses or the adequacy of representation outweighs its potential detrimental impact. Initially, the focus of attention in this action will be on the question of misrepresentation, and the above information is not important in that regard. Moreover, the process of identification of class members for purpose of notice should yield some information as to the time of purchase. Finally, we may await any responses received in response to the notice under (c)(2) before considering this further. This analysis also applies to the reliance information requested by defendants.

The thrust of defendants' argument relates to the relative bargaining power of the parties and settlement difficulties when named plaintiffs represent a silent class of potential claimants. This argument is essentially one that by virtue of the class action determination, plaintiffs will represent a class of people, the number of whom, at least in this case, apparently will be certain but whose potential maximum damages will nevertheless be uncertain. Moreover, and most importantly, the number of these potential claimants who will, in fact, finally assert claims is uncertain. Defendants argue that, as a consequence of the above, the plaintiffs draw bargaining strength from claims which will never be presented and a settlement of the action at a percentage of its maximum possible worth is impossible since that figure cannot be known.

We are not convinced that the uncertainty caused by the unknown variable of how many class members will, in fact, assert proofs of claim is, in itself, a substantial problem. At least, it is not a problem different in kind from that presented in other types of litigation. First, settlement negotiations frequently necessitate the mutual appraisal and bargaining over subjective factors. The value of an injury, even to a single plaintiff, is not always readily estimable in dollars and cents. Indeed, in this type of case, we do not deal with the uncertain valuation of physical, mental, and emotional suffering, but rather with money and the loss thereof or readily ascertainable market values. At least with

6. The proof of claim procedure has produced substantial commentary. The positions taken vary. See, e. g., 3B, Moore's Federal Practice § 23.55 (1969); 7A, Wright and Miller, Federal Practice and Procedure § 1787 (1972); Manual for Complex Litigation, para. 1.45 (1973); American College of Trial Lawyers, Report and Recommendations on Rule 23 of the Federal Rules of Civil Procedure (1972); Miller, Problems of Giving Notice in Class Actions, 58 F.R.D. 299 (1973); Ward & Elliott, The Contents and Mechanics of Rule 23 Notice, 10 B.C.Ind. & Com.L.Rev. 557, 567–68 (1969); Weithers, Amended Rule 23; A Defendant's Point of View, supra; Kaplan, Continuing Work of the Civil Committee; 1966 Amendments of the Federal Rules of Civil Procedure, 81 Harv.L.Rev. 356, 398 (1966).

7. In Brennan v. Midwestern United Life Insurance Co., 450 F.2d 999 (7th Cir. 1971), cert. den. sub. nom., 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972), the circuit court upheld the action of the district court which dismissed the actions of certain class members who failed to comply with the lower court's order for production of documents and records at the request of defendant before the trial of the case and adjudication in a 10b–5 class action. The defendants suggest that there is no basis for immunizing class members from discovery and that in light of the potential impact of such effort as illustrated by Brennan there is no practical reason to deny the use of the proof of claim procedure suggested. We will deal with discovery problems when necessary. But see, Frankel, Some Preliminary Observations Concerning Civil Rule 23, 43 F.R.D. 39, 47 (1967).

respect to this latter factor, there is more certainty in this type of case than others, not involving class actions. Second, even assuming that the defendants' suggested procedure were adopted, there would not be complete certainty as to the maximum damages, in fact. For example, the parties would necessarily have to evaluate the role of the concept of reliance with all its possible ramifications.

As defendants suggest, any settlement fund may, in fact, exceed the dollar amount of the claims eventually made. Nevertheless, the form a settlement may take is not immutable. We do not perceive any reason why maximum exposure could not be provided for with provisions made, depending upon the claims presented, for a return of any excess to the defendants. Cf. In re Coordinated Pretrial Proceedings in Antitrust Actions, *supra*, at p. 89,961.

We believe that these observations are equally applicable to the assertion that class representatives have untoward bargaining power since that essentially also rests upon the uncertainty as to whether class members will ever file proofs of claim. Presently, we cannot say that the element of uncertainty caused by the passive class concept cannot be adequately managed. The added bargaining power resulting from a silent versus an active class upon certification is only appreciable if the incidence of re-sponse is substantially different depending upon the timing of the requirement of a proof of claim. However, as noted above, we believe the recognition of such a difference is one of the principal rationales on which the opt-out procedure of (b)(3) actions is based.

This case presents a relatively small class action based on violation of the securities laws. It appears that the policy of providing a forum to small claimants is clearly applicable to this case. The dual notice and proof of claim procedure would be confusing and, with the provision for barring from any recovery those who do not respond, is at least arguably inconsistent with the provision for the inclusion of those class members who do not expressly request exclusion. Unicorn Field, Inc. v. The Cannon Group, Inc., *supra*; Korn v. Franchard Corporation, *supra* [8].

We need not decide, however, whether the suggested procedure is at variance with Rule 23 for purposes of all (b)(3) class actions. As explained above, we believe that the procedure implemented by section (c) of Rule 23 whereby class members who do not expressly request exclusion are bound by any judgment in the action serves two purposes. One, it provides defendants with a broadened res judicata effect to the action. Second, it provides absent class members with an opportunity to

---

8. In this decision, the court adopted the use of a proof of claim form substantially the same as that proposed here. However, the court concluded that it would be fundamentally inconsistent with section (c)(2)(B) of Rule 23 to bar the claims of those who did not respond. In a later decision, CCH Fed. Sec.L.Rep. ¶ 92,845 (S.D.N.Y.1970), the court revoked its earlier class action certification based, in part, upon the responses received pursuant to the proof of claim procedure. The Second Circuit 456 F.2d 1206 (1972) reversed the revocation of class action designation and disapproved the lower court's findings on the size of the class, apathy, and predominance of questions based on the proof of claim form responses. The Circuit Court held it error to revoke the class action designation based on the information contained in the responses or to limit the class to those who sent in the proof of claim forms. This decision was based partly on the fact that the proof of claim procedure utilized was voluntary and it has been said that the Second Circuit did not disapprove the use of the proof of claim procedure. Kohn v. American Metal Climax, Inc., supra, 458 F.2d at 289 f.n. 46 (Adams, J., concurring and dissenting). Yet, the decision was also based on the conflict of such action with section (c)(2)(B) of Rule 23 and supports the position taken by the lower court on the issue of barring the claims of those class members who do not complete and return the proof of claim forms.

share in recovery without affirmative action prior to the time that a settlement fund is established or liability or the legal wrong of the defendant is established providing an additional incentive to action for class members. Thus, defendants must demonstrate substantial reasons for the adoption of a procedure such as that suggested in order for the court to exercise the discretion it possesses under section (d) based on fairness or efficiency. For the reasons set out above, the Court does not believe that the reasons asserted by the defendants warrant the use of the procedure suggested in this case. Consequently, we conclude that to adopt the suggested procedure in this action would be inconsistent with the spirit of Rule 23.