Edward C. **FORBES** et al.,
Plaintiffs,

v.

**GREATER MINNEAPOLIS AREA
BOARD OF REALTORS** et al.,
Defendants.

No. 4–72–Civ. 569.

United States District Court,
D. Minnesota,
Fourth Division.

June 20, 1973.

Paul C. Sprenger, Johnson & Sands, Minneapolis, Minn., for plaintiffs.

Elliot Kaplan, Robins, Davis & Lyons, Michael E. Bress, Dorsey, Marquart, Windhorst, West & Halladay, Minneapolis, Minn., Jerome E. Franke, Franke & Riach, St. Paul, Minn., Melvin I. Orenstein, Lindquist & Vennum, Jerome B. Pederson, Fredrikson, Byron, Colborn, Bisbee, Hansen & Perlman, Minneapolis, Minn., for defendants.*

## MEMORANDUM

LARSON, District Judge.

In this antitrust suit four named plaintiffs seek to maintain a class action against 583 defendants who are all members of the Greater Minneapolis Area Board of Realtors. The plaintiffs allege that the defendants have participated in a combination or agreement to raise, fix, and maintain the fees charged by them for their services in various types of real property transactions.

The plaintiffs contend that defendants have effectuated their anticompetitive purpose by publishing and circulating fee schedules, using exclusive listing forms incorporating those schedules and employing multiple listing service practices which function as an unreasonable restraint of trade. The plaintiffs seek both damages and injunctive relief.

In determining whether this action is maintainable as a class action the Court is squarely confronted with important and controversial issues as to the viability of F.R.Civ.P. Rule 23. The core question is at what point the administrative, management and financial costs of a particular class suit overcome the laudable goals envisioned for Rule 23.

Both parties have made lengthy oral argument and submitted extensive memoranda. The decision of the Court of Appeals for the Second Circuit on May 1, 1973, in the important case of Eisen v. Carlisle & Jacquelin, et al, 2nd Cir., 479 F.2d 1005, served to redouble the parties' argumentative vigor.

The Court today conditionally determines that this action is maintainable as a class action with classes defined essentially as proposed by the plaintiffs. Because the class determination made today is conditional, and shall no doubt be the subject of a variety of motions, the Court does not deem it necessary, at this preliminary stage of the proceedings, to deal seriatim with each of the many contentions pressed upon it.

Rather, the Court shall state its broad view that Rule 23, in particular Rule 23(d), directly imposes upon the Court an obligation to proceed with flexibility and imagination in structuring the course of a class action. As stated in the Manual for Complex Litigation, § 1.43:

"Particularly in consumer class actions, where the potential or actual class members may number in the millions, the assertion of unmanageability is typically pressed upon the court. In considering whether the proposed class action is 'superior,' the court must make a realistic evaluation of the 'other available methods,' keeping in mind the purposes for which amended Rule 23 was designed. For it is just such situations where representative treatment may be most needed, since separate suits by the many plaintiffs, or against the many defendants would pose an intolerable burden on the party opposing the class as well as the judicial system; and

* Because there are several hundred defendants the above listed counsel for defendants were selected as a coordinating committee for defendants.

denial of relief as a practical matter for the persons injured.

"Rule 23 grants to the court broad discretionary powers to enable the court successfully to solve the novel administrative problems posed in a class action by the unusually large numbers of members of the class, each of whom may have small monetary claims." [Footnotes omitted.]

█ The Court has concluded from the incipient record before it that the complexities of judicial administration presented by this action are not sufficient to overwhelm the organizational capacity vested in the Court by way of the broad discretion of Rule 23. The Court finds that the prerequisites of Rule 23(a) are here met. The Court finds also, from what record there is now before it, that questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy, and that the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

The Court recognizes that the conditional determination made today includes a broad class. Factual development is needed that the Court may pass upon proposed refinements and revisions of the class definition. As stated in the Manual for Complex Litigation, § 1.42:

"The ultimate determination of the appropriate classes or subclasses can be made only if the court has, in the record before it, reliable economic data on the structure and practices of the industry . . . .

"Often in class action litigation conflicting interests exist between groups which fall into a general class. The court should carefully examine each class to determine whether or not there are groups within the class which may have conflicting interests. If such groups are identified, subclasses should be formed with appropriate representative parties and independent counsel to represent the conflicting interests of the subclasses. Such subclasses should be formed promptly in order that the conflicting interests may be properly represented and the counsel for the general class will not be in the position of representing the conflicting interests." [Footnotes omitted.]

While the Court believes that this action may be satisfactorily organized as the case develops by changes wrought on the conditional class determination made today, the Court also recognizes that the presence of large, although unspecified, numbers of plaintiffs presents an aspect of uncertainty which should be promptly resolved.

█ Counsel have estimated that the class of plaintiffs includes approximately 100,000 people. The Court is of the view that fairness, economy and efficiency in the administration of this action would be served by use of the so-called "dual notice" device. The operation of this device is simply to require class members who do not opt out to take some affirmative action as a condition of ultimate recovery. The use of this technique is discussed, and cases cited, at 3B Moore's Federal Practice, Para. 23.55, and Wright & Miller, Federal Practice and Procedure: Civil § 1787. In future proceedings directed to the question of notice, the Court's favorable view of the "dual notice" device might be considered by the parties. Consideration should be given also to the question of whether the dual notice should be given at one time or split up so that the opt out notice precedes the notice of the requirement of affirmative action as a condition of ultimate recovery.

The Court also has before it a motion of defendants for an Order striking Paragraph 22 of the complaint, wherein is alleged fraudulent concealment by the defendants, and dismissing all claims accruing prior to the statutory period of limitations imposed by 15 U.S.C.A. § 15b. A ruling on this motion shall be forthcoming shortly.